The next case on our calendar this morning is number 2023-40 Saeli, if I'm pronouncing that correctly, versus Chautauqua County. Good morning. May it please the Court, Andrew Rhys-Davis representing the appellant Mr. Saeli. The District Court's judgment should be vacated and the case remanded with instructions to enter summary judgment in Mr. Saeli's favor on the question of exhaustion and to adjudicate the merits of his claims. Under the circumstances of this case, Mr. Saeli exhausted his administrative remedies by filing an informal grievance in respect of the September 24, 2016 attack and about the handcuffing policy. So you're saying the filing of the grievance was when? When he handed it to Fuller and the fact that Fuller handed it back didn't matter? Or you're saying the later assertion that he then did a second informal grievance after that? Your Honor, let me take you, if I can, through the evidence on this and that way answer your question. The evidence in the record at summary judgment is that the defendants had Mr. Saeli's informal grievance in their possession when it came time for discovery. And there is nothing in the record as to how they got it, if not through Mr. Saeli filing it as part of the grievance process. And in his summary judgment declaration, Mr. Saeli affirms under penalty of perjury that he filed an informal grievance and that the jail never responded, didn't issue him the formal grievance form that would have unlocked the rest of the process and thereby prevented him from accessing the rest of the process. Well, but that's different than what he said in his sworn testimony, right? He had the deposition and he didn't say that, did he? Well, Your Honor, let me address that. There are a couple of items of evidence that my adversary says are inconsistent with Mr. Saeli's summary judgment declaration, and they're not inconsistent. Your Honor referred to the 50-H testimony that Mr. Saeli gave. Well, I'm referring to that and the complaints also, right? I'll address the complaints as well, Joe Sullivan. What the defendants put in front of the district court was, and this is JA 753, it's half of Mr. Saeli's answer to a question that was not about whether he filed a grievance at all. It was the question about whether he saw a doctor about the The answer is not in the record because it's cut off from what the defendants put in front of the district court. The answer is, yes, I saw a doctor, but only after the State Commission of Corrections got involved in response to my October 6th letter. And in the wind-up to that answer, he explains how he came to write to the Department of Corrections after he got no response to his grievance to the that Mr. Saeli's summary judgment evidence is inconsistent with the complaint, and it's not. I'd like to refer the court to the portion of the complaint, which is at JA 98, and here there is a checkbox, did you grieve or appeal this claim, and he has checked yes. And then there's a second question, did you appeal that decision, and he has checked no. That is entirely consistent with his grievance, but the jail then shut him down by not responding to it, not providing the formal grievance form that would have allowed him to access the appellate portion of the process. And yes, for sure, there is a garbled section of text in the middle of this page where he has tried to write in the little space that he's allocated, and there are some garbled words about his interaction with Sergeant Fuller and his letter to the State Commission of Corrections. He doesn't say that he wrote to the State Commission of Corrections instead of filing the formal grievance, and in fact, in his summary judgment declaration, what he said is that he wrote to them afterwards because he'd gotten no response, and that's consistent with the chronology. The attack was on September 24. The grievance process is supposed to take a few days at most. October 6, when he writes to the Commission of Corrections, is 12 days after the attack, so it's highly consistent with what he is saying at summary judgment. But even if the Court thinks there is a tension between the complaint and what he says at summary judgment, it is certainly explicable here. This complaint, JA 98, is 14 months after the event, and importantly, it's a year before the defendants turn the informal grievance form back over to Mr. Saley in discovery, and I think that the sequence of discovery is instructive in explaining what happened here. I'm going to interrupt for just one second, excuse me, but I'm looking at JA 98 and I'm confused. It says, did you grieve or appeal this claim? He strikes yes, and then he says, I tried to. I asked for a grievance and received one. I completed it and handed it to Sergeant Fuller, handed it back to me, and told me don't hold, don't, I can't read it that well, but don't hold, and gave grievance back to plaintiff, period. So I understood that that was his initial position, that he tried and was rebuffed by Fuller, and so he decided to write to the Commissioner, and not that there was a second occasion on which he then submitted an informal grievance form. Your Honor, I think it's just incomplete. It doesn't say whether he ultimately submitted an informal grievance to the jail, and maybe if I could... It's incomplete in a pretty significant way, isn't it? It is, but I have two points to make on this, Your Honor. First of all, the sequence of discovery here. It wasn't until 21 months into this lawsuit, a year after he wrote this, that the defendants turned the grievance form back over to Mr. Saley in discovery by way of initial disclosure, although it wasn't very initial at that point. You know, as of February 2019, Mr. Saley was trying to take discovery into the investigations that were undertaken as a result of the injuries he had suffered, so directly relevant to the exhaustion issue. In March 2019, the defendants obtained a stay of most discovery because they wanted to file an early summary judgment motion, not on the exhaustion issue, but on the question of whether he could link his injuries to the attack. In April 2019, when the summary judgment motion was filed, it included non-exhaustion as a ground for summary judgment. Twice, while the summary judgment motion was pending, Mr. Saley sought permission to take the deposition of the document custodian who was saying that he hadn't filed the grievance. Extraordinarily, the district court denied that request without prejudice to renewal after the adjudication of the summary judgment motion, even though that person's declaration was part of the summary judgment package. And then again in June 2020, Mr. Saley tried again to take Officer Gruber's deposition and the district court never even adjudicated that. But my second point on the question that Judge Carney was asking about the middle section of this JA-98, you know, the Supreme Court has said that there is no pleading burden as to exhaustion, yet the Western District form has this tiny little section where someone is supposed to say whether they've exhausted and whether they've appealed and to explain all of the background to it. The Supreme Court has said that there are disapproved court rules that require a prisoner to allege and demonstrate exhaustion in the complaint. They're not required by the PLRA. And in Jones, the Supreme Court said that crafting and imposing these kinds of rules exceeds the proper limits of the judicial role. And frankly, this line and a half that you get to explain this seems like really a trap for the unwary or a trap for the unrepresented in this case. And in preparation for argument, I actually went to the Western District website to see whether the form is still there in this form. And what is there now is at least as bad. There are now three pages of detailed questions about did you exhaust, did you appeal, what happened, why not, with tiny little fillable boxes. And it really is inconsistent with Jones, and it really is a trap for the unrepresented. So having now dealt with the complaint and having dealt with the testimony, really all that leaves is the evidence from the document custodian. And all that says is that among the approximately 21 formal grievances and approximately seven informal grievances Mr. Saley filed at the county jail, they didn't find one about the September 24 attack. Well, that doesn't give a basis to discount his testimony that he did file one. They had the informal grievance somewhere in their files, and there's nothing in the record as to how they got it if not through Mr. Saley filing it. As this court said in Williams... Well, there is a theory about that. I don't know that that amounts to evidence, but it's notable that there was a separate set of interactions with the sheriff, right? And this document bears, for whatever that's worth, the case number of the sheriff's investigation. But there is nothing in the record, Judge Lynch, about how the sheriff got the document if not through the jail via Mr. Saley. How about through Mr. Saley? They deposed him, didn't they? They deposed him, and they didn't ask him that question. So, I mean, it's an affirmative defense. It was their burden to develop the record, to support it. They didn't do it. And may I ask a distinct and narrower question? With respect to the handcuffing, Mr. Saley, it seems to me, raises two different excessive force claims, right? One has to do with, you know, the use of physical force against him to extract him from the shower. The other deals with the procedure for handcuffing, and that's the one on which he seeks to damages not only from the officers, I think, but also from the county, right? Correct, Judge. Is it not the case that the grievance procedures in the handbook say that grievances regarding, among other things, issues that are outside the authority of the jail captain to control are not grievable issues? That's absolutely correct, Your Honor. So, as to that, as to that particular claim, there was nothing to exhaust. Is that not right? That's exactly right. It's just like this court's decision in HUBS. It's actually a very similar grievance policy in HUBS. There, the holding was the jail captain didn't have control over what was happening in a holding area at the county courthouse. Here, it's analogous, because the jail captain didn't have control over the policy. But the officers themselves are the ones who carried out the policy, right? Right? Yes. On September 24th, 2016, this was an instance in which Mr. Saley was subjected to the policy. Yes. But if they were carrying out a policy that was set over the head of the jail captain, could the jail captain tell them, don't follow the sheriff's rules for how to handcuff? I actually think not. No, no, Your Honor. But I think the point for the exhaustion issue is that this is something that is categorically outside the scope of the jail. That's the question I'm asking. Is it not the case that, as applied to the officers, they were following orders from above the jail captain? Now, that doesn't justify them in doing something that's unconstitutional. But it does prevent, it would seem to me, the jail, take this out of the control of the jail captain. He didn't give this order. He couldn't undo this order. The order came from above. Yes. And the policy makes clear, I mean, the captain is subject to it. It talks about what the captain will and may do. And we also have the testimony that when Mr. Saley previously tried to complain, to grieve about the handcuffing policy, he was told that it was outside the control of the jail and not grievable. So on that claim, for sure, there is a second reason. The district court treated that conversation as if what Saley was saying was, I was misled. But in fact, and maybe that's what Mr. Saley thought he meant or he understood the situation, but the fact is he was being given accurate information that this is not grievable. That's exactly right. So for the Monell claim, there is a second reason that summary judgment needs to be vacated and summary judgment entered in favor of Mr. Saley. And if I could just flip back very quickly to just dealing with the excessive force claim against the officers, I was going through the problems with the only evidence that's now in the record about his supposed failure to exhaust. It's this grouper declaration, the document custodian. There's no explanation as to where it came from, if not from Mr. Saley. As this court said in Williams, when the grievance coordinator says that he or she has no record of the grievance, that's consistent with the fact that the officers failed to file it after they were given it by the prisoner. There's also the terribly hedged language about the approximate number of grievances that he filed. It doesn't inspire a lot of confidence. It's a tell that the jail isn't terribly confident that it doesn't have a grievance. And there's also the real oddity that in paragraph 24 of that declaration, which is on JA 346, the jail seems to be saying it only looked for informal grievances starting from September 28. Well, what about September 25, 26, and 27, given that the attack happened on the 24th? Can I ask a question about the Monell claim with your indulgence? I mean, as I understand it, a Monell claim against a municipality requires a primary violation, doesn't it? I think that's right, Your Honor. Yes. So if the guards beat the snot out of a guy and they say, well, this was the policy of the jail that told us if they look at us cross-eyed, that's what we do. Your view is that they don't have to grieve that because it was the policy of the jail? No. No, I'm asking him. I'm asking him. No, they don't have to because just on the face of the policy. You're saying they don't have to. So that's the end run around Monell. If there's a policy, which is what Monell is all about, you don't ever have to grieve. So it seems that Monell claims never have to be grieved is what you're saying. Well, unless there's some way to grieve them under the relevant institutional policy, which there isn't here. Mr. Davies, are you saying that if the policy that if he looks at you cross-eyed, you beat the snot out of him, was set by the jail captain, that would have to be, and that might be a Monell claim because the jail captain may be, I don't know, high enough as a policymaker to bind the county. But if the jail captain set the policy, it would be required to be grieved. Absolutely, Judge. The issue here is not that it is not grievable because it's a Monell claim. The argument here is that under this jail's policy, which need not be the policy of the jail, I suppose they could have made such things grievable. And if they made them grievable, then it would be required to grieve them. The problem that you are pointing to is that the grievance policy says that things that are outside the control of the captain are not grievable. Your allegation is that this policy was set by the sheriff. You've got a document that is that policy set by the sheriff. And you've got the testimony that one of the officials at the jail told Mr. Saley that this was not grievable because it was outside the control of the captain. That's all the problem with the Chautauqua County grievance policy. It seems to me they could have said you can grieve this. And if they said that, I assume you'd have to grieve it. I think that's right, Your Honor. And that makes sense as an outcome, actually, because the whole purpose of having the grievance process is to give the institution the opportunity to fix the issue. But if the issue is coming from outside the institution, then the rationale for having the exhaustion in the first place just doesn't apply. Well, of course, but it's coming from somebody who has the ultimate control of the institution, namely the sheriff. So it would be an easy enough matter to have a grievance policy that said you have to grieve it and the grievance has to be addressed by whoever has the authority to address it. It doesn't necessarily have to be the warden. But that's all your problem is, or your argument is, that's not what this policy says for whatever reason. That's exactly right, Your Honor. For that reason, Mr. Saley's entitled to summary judgment. On that point, because the defendants had the burden of proof on exhaustion, they needed to come forward with enough evidence to justify a fact finder finding in their favor. So they were on notice of the need to do this. As the Ninth Circuit said in the Albino case, there's nothing unfair about granting summary judgment in favor of the prisoner in these types of cases precisely because the jail had the incentive to come forward and to provide all of the evidence it has. And may I ask, are there damages that are specifically associated with the handcuffing as opposed to with being thrown to the ground and whatever else he alleges the guards did? Your Honor, I'm not certain that the record has been sufficiently developed on the issue of handcuffing. I was just trying to figure out why you did not raise this problem in the oral argument. You raised it in a brief. Is that maybe the handcuffing claim is a less helpful claim for your client in the long run? But it is one on which I think the grievance, the exhaustion issue, stands in a different relation than the other claims. Well, Your Honor, I raised them in that issue purely because the fact that he did file the informal grievance and the jail shut it down, that entitles him to summary judgment on both claims. Right. As to the Monell claim, there is an independent problem, which is the fact that it was not grievable in the first place. And therefore, there are two routes to get Mr. Saley's summary judgment. The first applies to both claims. The second, the fact that the Monell claim was not grievable, entitles him to summary judgment on that claim. Thank you, Mr. Davies. You have two minutes of rebuttal. We'll hear from the county. May it please the court. Good morning, Your Honors. My name is Michael McLaren. I represent the county of Chautauqua with respect to this matter. And I'm here to urge you to affirm Justin, Judge Sturgis's decision below granting summary judgment on exhaustion. The court is correct that five different times before we got to the summary judgment motion and before we got to discovery, Mr. Saley gave sworn proof, sworn evidence, testimony that he did not submit an informal grievance according to the policy. There were four separate complaints that were all drafted independently by Mr. Saley. They weren't cookie cutters. He didn't just copy one from another. And here we're talking about informal complaints about the excessive force used by the officers or about also the handcuffing policy. Well, he says that he didn't submit grievances on either. And the record is perfectly clear in that. I can point to docket number four. Okay, so either is what we're saying. And you, Your Honor, read from one of them. There's four of those. And they're all essentially the same. And they're all written independently. And they all say that he didn't file a grievance. He also gave sworn testimony. And the tortured reading of that testimony shows the desperation of the appellant here. But the fact is that he said when Fuller told him, said don't hand that in, he took it back and he sent it to the state. Under the precedent of this court, that's not good enough. Why isn't a factual question sufficient to avoid summary judgment raised by the production during discovery of the form with a number on it? I would say to Your Honor, and I would ask this court to follow, the holding that it made in Rojas and that was recently reaffirmed in LePere v. Valleje from 2001. And basically what the court there said is shifting and contradictory statements of a plaintiff in a situation like this where they directly contradict what they said before on a summary judgment motion designed clearly to just raise a question of fact is not enough. And the appellant here has said, well, this isn't one of those extraordinary cases where you want to do that. And I would urge the court to take a look at this and say, in what other case are you going to have five different times where a plaintiff has given sworn testimony that directly contradicts what he said on summary judgment? So I would urge this court that this is, in fact, one of those extraordinary cases where you look at it and you say, we take his testimony from start to finish up to the summary judgment motion, and he says he says, oh, well, I guess I did. I must have handed it to some unknown, unidentified person on some unidentified date. Well, I guess I did. Is that exactly what he said? Because if he said that, it seems to me that's more credible than if he said, now I remember that this is what I did. Because what he's responding to is the somewhat unusual fact here that there is a grievance form that he didn't produce and say this is a copy of what I gave to somebody at any time. It came somehow from the county. Now, I don't know where it came from in the county. I don't know it came from the sheriff or from the files of the jail. But he's in discovery, and he asks for relevant documents, and someone on your side of the V produces this grievance form. I mean, that's a peculiar fact. How do we explain that, I guess, is my question. Well, I think you explain it, I can explain it, I think, in two ways. One, it was produced in initial disclosure, so it wasn't as though he said give me back my form, which I think would be a little bit of a different story. It was produced by the county, and frankly, Your Honor, it was produced by the county, and we didn't deal with it on summary judgment, basically because of the number of times that he gave sworn testimony that he didn't hand that in, that he took it back. I understand that point. My problem is you say it would be different if he said, give me back my form. That would suggest that he remembered having put in a form. But we're faced with the fact that they had the form, and I'm just trying to understand, how are we to assume, how are we to understand the fact that the county had a grievance form? You have a guy who swears, we check the grievances, they're not there. Okay, fine. But then you produce a grievance form, and it's, granted, it's a very peculiar form, because it purports to be a form dated a particular date, but it has information that comes from after that date, about things that happened after that date. You know, I find it totally inexplicable, frankly. But is there not something unusual about this case? This is not a case where somebody testifies to a bunch of things, and then says, oh yeah, I had a sudden revelation. This is different. There's a reason why he has the revelation, and the reason is that this was produced to him from the jail files. And I'm just wondering, does this, is there some explanation of how this got into the files? How this became a document that the county had, if he had never submitted such a form as part of the grievance process? Now, maybe he submitted it later. I mean, there are all kinds of problems with, you know, I don't know if this is somehow fatal. I'm just trying to understand, because there's not usually a case, in my experience, where the plaintiff says, I never gave them a form. The defendant's custodian says, I couldn't find a form. But still, in the initial disclosures, or in response to a generalized discovery request for documents or whatever, the jail produces the very form, or something that looks like a kind of form, that it's denying it had, and that he never said he gave them. Well, as we explained in our brief, we believe that we got that from the state. But what you're asking the court to do here, Your Honor, is to not believe the five times that the plaintiff swore under oath that he didn't hand it in. And when we make our summary judgment motion, and we put in our burden of proof, and we say, okay, here's the exhaustion policy. This is what he's claiming. And by the way, he says five times under oath that he never handed one in. We meet our burden there. But still, you know, the form appears, and even though we might accept the explanation that it overlooks stating anything about it, why doesn't it create enough of a material issue of fact, just notwithstanding his prior overrules that he didn't submit anything to defeat summary judgment? If his five statements under oath were in any way unequivocal, or ambiguous, or nebulous, I would agree with you, Your Honor. But they're not. He tells the exact same story five different ways that he didn't hand in the form. And then turns around, and after the disclosures, says, oh, well, I guess I did. Well, suppose he testified under oath at trial that, you know, I can't frankly tell you. I don't remember now whether I submitted a form. But they had the form. And I know I tried to give it to them. I've said that all along, and they turned it back. But it turns out somehow it got through. I don't remember how it got through. And that's why I said I hadn't done it. But there they had it. And they gave it back to me in discovery. And of course, you cross-examine him to death over the fact that he said this, and he said that, and he said the other thing under oath. And he said, yeah, at that time, I didn't remember. Would a reasonable jury be compelled to decide that he was lying, that he knew perfectly well, that he had never, knew as he sits at the witness stand, that he never submitted this? Again, Your Honor, if he had been in any way ambiguous in those five prior sworn statements, I would agree with you. But his testimony was on JA-755 deposition. After he tried to file a grievance, he still went forward and submitted a letter. Yes, not to the jail, but to the state. He's not equivocal. He doesn't say, well, you know, I might have. I don't really remember. I don't recall doing it. His story is perfectly clear. He went to hand it in, and Fuller said, don't do that, and he took it back. Every single time, that's what he said. And if he had said, I don't remember, I'm not sure, we would be having an entirely different conversation. I grant you that. But that's not what you have. And if this court is going to look at this and say, somebody can testify four, five times under oath as to one version of events, and then in response to a summary judgment motion, change the story, and that's okay, and that's enough to go to a jury, then every single one of these cases goes to a jury. Can I be clear on this? There is no jury right on exhaustion, right? I think that's right. So we're not talking about a jury trial. We're talking about, at most, a hearing by the district court, where the district court is the fact finder, determining whether or not there was exhaustion. I have not seen a case that says that explicitly, but the courts have come out. Mesa v. Gord. Doesn't Mesa v. Gord say that? It says that the issue, I haven't seen one where there's actually been a hearing solely on that issue. I've held hearings solely on that issue in the district court. The courts do say that the issue of whether or not there was exhaustion is a question of, for the court, whether there's questions of fact or not. So I would agree with you. I think it would ultimately end up being a hearing before the judge. But the same question, though. The judge would be compelled, it would be clearly erroneous for the judge to believe a statement that, you know, look, I kept trying, and I guess it got through because there it is in the court. I think that question should be phrased as, could any reasonable trier of fact look at five statements that are all consistent under oath, and one statement that says, well, I guess I bust out? Could any reasonable... I guess the concern I had is that it doesn't seem that in the summary judgment ruling that Judge Sirigusa acknowledged the second version, in other words, and found it not credible. He seems to have just focused on the facts that you're focusing on, which is his admission that he didn't file. Right. Am I wrong about that? No, I think that's right, and I think that that's proper for him to do when he looks at five... I know I keep harping on this, but five instances of sworn testimony. You can believe a plaintiff when he says five different times under oath, this is what happened. And I think Judge Sirigusa could look at that and say, and his explanation was, well, Fuller told me not to do it, so I took it back. Part of your explanation in your brief is that the sheriff's office number, case numbering system is different from the jail's numbering system, and that the number that appeared on the document kind of suggests strongly that it was not filed with the jail. Right. Is that right? And you cite two pages in the appendix. I mean, is that something that, even though the district court didn't rule on that, that it's clear from the documents that are part of the record that we can consider? I think that's true, Your Honor. Yes. And I think that you can look at this whole penalty of facts and say, Judge Sirigusa looked at this and said, I can believe the first five times Mr. Saley swore under oath as to what happened. I don't have to believe the last one. If I... Can I ask a question about the handcuffing thing? Yes. I did want to address that. Yeah. Well, I'm happy for anything you have to tell us about that because it confuses me, but specifically in your comments at some point, could you just address, there is this account that Mr. Saley gives about Sergeant Fuller said, I don't want to hear anything about this incident. I'm not going to take the form. It sounds like, well, I have carefully enough. There's also some conversation that he talks about where he is told specifically about the handcuffing policy. Oh, am I right? That that was before this incident? So that's where that comes from. There was... Someone else told him separate from the Fuller conversation and in regard to a different incident. Well, we don't... That the handcuffing policy is on. We don't know when this alleged conversation took place. There is mentioned in the record by Mr. Saley that he tried to grieve the Monell claim and was told that that's not grievable. We don't know who told him that, when, where, or how, but I would like to address, if I may, Your Honor, the point about whether or not the quote Monell claim is grievable. And I think I would point out to you that Monell is a theory of recovery against the counter. The underlying damage, which is the claim injury to the wrist, is grievable. Why? Why is it grievable if the policy is set by someone north of the captain in charge of the jail? How could you submit a grievance to the captain of the jail addressed to the fact that officers applied a policy that is outside the control of the captain? Well, so this court actually addressed what I think is a very sort of similar case just recently in July of 2021. Judge Carney was on the panel of this case. It's Lev versus Toms. And in that case, this was a case where a prisoner, and this was not in our brief because it just occurred and our brief had been filed, but a prisoner sued the state claiming that he was the subject of internal prison discipline action and was placed in, I believe, solitary confinement. And he sued. And he said that was unconstitutional. And the defendant said, well, yeah, but you didn't grieve that. And their policy says that you can't grieve disciplinary proceedings in the jail. And this court said in that situation, yeah, you can't grieve the discipline because it's not an appeal process. However, you do have the right to grieve the discipline. That seems pretty straightforward, right? You can't grieve that they found you guilty. You can grieve that they put you in solitary confinement, which is unconstitutional. That's a separate problem. But that seems different to me than saying you can somehow grieve under a policy that says grievances that are outside the control of the captain are not grievable. How you can be required to file a grievance, nevertheless, that officers applied this policy that is outside the control of the captain. Because what Mr. Saley is saying is that this policy, as applied to me, caused me an injury. Therefore, that's grievable. It was caused by the hand in the form, and they went through the process, and they said, no, you can't do that. But it's the end result that is grievable, the damage to his wrists or whatever he wants to say. And what is the grievance procedure? What's going to happen in response to such a grievance? Either he gets medical treatment if he's claiming he's injured. I mean, they can't offer money wrong, or they did some expert turn of the screw. He's specifically charging that he was handcuffed in accordance with policy. Well, I don't think that that's true, because if you look at the papers, what he's really saying is, and in response to the summary judgment motion, we put in the policy and said the policy is legitimate. That was one of the bases for summary judgment. The policy may be legitimate. But he responded and said, well, they didn't do it to me the way the policy's written. So he's not really challenging the policy, because it didn't work on summary judgment. So what he's saying is, the way it was applied to me hurt, and I want to grieve that, and there is no exclusion for that. And I think that's perfectly consistent with Les. And I also think it's consistent with Ross, which has said, don't create judicially created exceptions to the exhaustion requirement. It's not a good idea. The PLRA exhaustion requirement is very important from public policy reasons, and don't do that. But it's also important that the grievance procedure be clear and intelligible and cover the situation raised. And when you start with the advice at the very beginning of the complaints and grievance inspection in the handbook, to say the issues that are outside the you know, if one understands that there's a general county policy to handcuff in a certain way that's harmful and dangerous, that on its face seems to me to be not a grievable issue, because the jail captain can't be conceived of as having any authority to control it. So why, is there an alternative understanding of this? Yeah, this this court has said on a number of occasions, especially with respect to the issue of whether or not there was intimidation or fear, the court has said you need to look at what an objective prisoner would think at the time. And here, would an objective prisoner look at that policy and say, if that prison guard put handcuffs on me and they hurt, that under that policy it's not grievable? That's not what the complaint says. Here's the first claim in the complaint. Recently, apparently he's wrong about whether this is recent by the way, Chautauqua County, the Chautauqua County Sheriff's Department and the Chautauqua County Jail implemented a new method of handcuffing and shackling individuals by forcing the individuals to twist their hands so their hands and thumbs are pointing to the ground. The handcuffs are then placed on the wrist and the wrist pressure points. The handcuffs are locked in a sideways position. Shackles are placed around the ankle bones and its pressure points. This restricts blood flow and causes loss of feeling. This method is designed to inflict pain, including but not limited to nothing says these guards didn't follow that policy. It says he's challenging the policy. But, but your honor, he said that on summary judgment in response to the summary judgment motion. I know that that was what his complaint says, but with everything else with Mr. Saley, the story is fluid and he comes up with a new version based on what suits him best. Um, and in that regard, um, your honor, what you need to look at is what would a reasonable prisoner think at the time of the issue, September of 2016, would he think that when he was handcuffed behind his back and his wrists hurt, that that's a grievable offense. If that's true, that's what you look at. And you say, well, he says that he believed that this was a policy of the Sheriff's to challenge this policy. He was told that's not grievable. He said, and, and in fact, the policy says it's not grievable if it's not a policy or procedure or something that's in the control of the captain, but a reasonable, it seems to me that a reasonable person might think I can't grieve this under those circumstances. Your honor's referring to a complaint that was filed almost a year after the incident. And I think what you need to do is look at what would a reasonable prisoner think at the time the issue arose. Is it grievable or not? The fact that later on he learns that it was because of policy and that he comes up with a Monell claim. I mean, basically this court would be setting a precedent that Monell claims. No, no, no, no, no, no, no. It's not because it's a Monell claim, except that if it is a county policy, it becomes a Monell claim. A grievance against the officers would be the same. It's not the fact that it's Monell rather than individual damages. It's the fact that the policy says, the grievance policy says that things that the captain can't control are not grievable, period, full stop. That's the problem for you, not the fact that it's a Monell claim or not a Monell claim. So on a summary judgment motion, it was the plaintiff's obligation to show that there was, that this was somehow outside of the control. That the jail captain couldn't have said, don't handcuff him that way. That hurts. Especially when he says they didn't follow the policy, but I think we're beyond that. And there isn't that proof in there. I mean, basically what you have is, is Salie saying, I was injured on September 16th of 2016 because of the way they put the handcuffs on. Every reasonable officer or prisoner looking at that situation, looking at that policy would say, I need to grieve that. That's the bottom line here is whether or not it's grievable. And if, and until he gets to the point where they come back and say, no, that's not grievable, or this is beyond the scope or something else, which never happened, he just assumed from day one, he hasn't exhausted. We would have a completely different conversation if he submitted a grievance form and they came back and said, well, this is the policy. We can't control it. So you're done. Okay. Then we're done. But he didn't do that. He didn't do it for whatever reason. The prisoner, just to be clear, you're saying a prisoner is required to grieve something. Is anything in which any way by which he becomes injured in the prison, regardless of what the grievance policy says, if he reads it and thinks, oh, this doesn't seem grievable, he should still grieve it anyway. And have the prison authorities tell him, you're wrong. Look, it says it's not grievable. I think if reasonable minds could disagree as to whether or not it's grievable, they should err on the side of caution and grieve it. Yes. And in this situation, I think it is grievable because what he's talking about is the injury to his wrist. It is just like the results-oriented decision by this Court in Loeb that says you can grieve the result. You can't grieve the discipline. And does this Court want to support the idea that you have prisoners that are just grieving policies that they don't like without a corresponding injury? That's not appropriate. And what we're looking at is the injury to his wrist was the issue. But what if it's caused by the policy? I mean, look, I think on the merits, this is a problematic claim because, at least as I understand this, it's not so easy to do. I tried putting, you know, it seems like this is not, first of all, it seems like this is something that is done rather commonly. So I think he's got a hard road to go on the merits of the claim that this particular practice is unconstitutional. Right. But that's a separate problem. I agree. That's a completely... And we made the motion below on the basis of no injury and that the policy is proper and the judge never got there. Never got there. So, I mean, I could talk to you about the merits. Well, you'd go back and do that to the district court. I'd rather not. Of course. Of course. All right. Thank you, Mr. McLaren. Thank you, Your Honor. Thank you very much. Mr. Davies, you have two minutes for rebuttal. Thank you, Your Honors. Mr. Saley is adamant that he turned in the informal grievance and what the court's being asked to do is to disbelieve him. There is no basis for that. My adversary invokes the sham affidavit rule, but this court's been clear that that doesn't apply if the prior account is merely ambiguous, confusing, or incomplete, and that's what we have here. We talked about the 50H testimony, which was not even about the question of filing a grievance. We talked about the operative complaint. The other complaints are the same. JA 18 has the same checkboxes. Did you file a grievance? He checks, yes. ECF number four is the amended complaint of 15. Mr. Saley writes, I wrote to the state commission of corrections about the incident because I was refused a grievance procedure. JA 164, his attempted third amended complaint, he says I was denied the jail program. So there is nothing inconsistent here between what he said under oath previously and what he is saying on summary judgment. And to the extent the court thinks there is a tension between those four complaints and the 50H testimony and his summary judgment declaration, it is certainly explicable based on the sequence that I outlined for the court. This is summary judgment. We are drawing inferences in favor of Mr. Saley as the non-movement. He got this form, the informal grievance form produced back to him in discovery a year or so after the complaint and it refreshed his recollection. That is the only permissible inference from this at the summary judgment phase, drawing inferences in his favor. Dealing finally with the Monell claim, I mean, the policy categorically makes this claim not grievable for the reasons that I discussed during the first part of the argument. In addition, Mr. Saley had previously been told that it was not grievable. And the suggestion by my adversary that Mr. Saley had some duty to show that the policy is not, that the grievance policy is not applicable is completely inconsistent with this court's case law. In Hubs, for example, the court wrote that the defendant needs to prove that a grievance policy or procedure existed and covered the dispute at hand. So it was the county's burden, the county didn't meet it. And for that reason, at a minimum, the award of summary judgment in their favor needs to be vacated. For the reasons I've articulated, in fact, summary judgment should be entered in favor of Mr. Saley. Thank you. Thank you very much, Your Honor. Thank you. Thank you both. We'll reserve decision.